**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SARAL NETWORKS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Case No.: 2:26-cv-00517<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF SARAL NETWORKS LLC'S COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW Plaintiff, Saral Networks LLC, which by and through its undersigned counsel, files this Complaint for patent infringement under 35 U.S.C. § 271 against Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (collectively, "Samsung" or "Defendants") and alleges as follows.

## NATURE OF THE ACTION

1. This is an action for infringement of United States Patent No. 9,363,709 ("the Saral Networks Patent" or "the Asserted Patent") under the United States Patent Laws, 35 U.S.C. § 1 et seq. A Copy of the Saral Networks Patent is attached as Exhibit 1.

## PARTIES

2. Plaintiff, Saral Networks LLC ("Saral Networks"), is a Texas Limited Liability Company having an address located at 181A North Shore Blvd., East Sandwich, MA 02537. Samrat Vasisht, the inventor named on the Saral Networks Patent, founded and manages the operation of Saral Networks.

3. Defendant Samsung Electronics Co., Ltd. ("SEC") is a Korean corporation having a principal place of business at 129, Samsung-Ro, Yeongtong-Gu, Suwon-si, Gyeonggi-do, 16677, Republic of Korea.

4. Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation having a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. 6. On information and belief, SEA is a wholly owned subsidiary of SEC.

**JURISDICTION AND VENUE**

5. This action arises under the Patent Act, 35 U.S.C. § 1 et seq.

6. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue in this District is proper under 28 U.S.C. § 1391(c)(1)-(3) and 28 U.S.C. §1400(b). SEC is not a resident of the United States and may be sued in this District, as suits against foreign entities are proper in any judicial district where they are subject to personal jurisdiction. SEA has a regular and established place of business in this District, at 6625 Excellence Way, Plano, TX, and at 1100 Klein Road, Plano, TX. On information and belief, SEA employs full-term personnel such as sales personnel and engineers in this District. Further, SEA is registered to conduct business in the State of Texas and has a Texas Taxpayer Number of 11329511536. SEC and SEA both have conducted and continue to conduct business in this District, and both have committed and continue to commit acts of patent infringement in this District.

8. This Court has personal jurisdiction over Samsung. Samsung has conducted and continues to conduct business within this District. Samsung, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, makes, uses, offers

for sale, sells, imports, and/or advertises (including by providing interactive web pages) its products and/or services in the United States and this District and/or contributes to and actively induces its customers to ship, distribute, make, use, offer for sale, sell, import, and/or advertise (including the provision of interactive web pages) infringing products and/or services in the United States and this District.

9. Samsung, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that those products will be purchased and used by customers and/or consumers in this District. These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or imported by customers and/or consumers in this District.

10. On information and belief, Samsung has also placed the Accused Products, including, for example, the accused Samsung Galaxy S26 series smartphones, into the stream of commerce by shipping the Accused Products into this District and shipping the Accused Products into the United States knowing that those products would be shipped into this District.

## JOINDER

11. Joinder of Defendants is proper under 35 U.S.C. § 299. The allegations of patent infringement contained herein arise out of the same series of transactions or occurrences relating to the importing (or having imported) into the United States and/or making (or having made), using (or inducing the use of), selling, or offering for sale within the United States, the same Accused Products. Samsung Galaxy S26 series smartphones are a nonlimiting example of the Accused Products imported, sold, offered for sale, and/or used in this District.

## THE ASSERTED SARAL NETWORKS PATENT

12. The U.S. Patent and Trademark Office issued the Saral Networks Patent, titled "Method, System and Device for Automatically Configuring a Communications Network," on June 7, 2016. As a result of Patent Term Adjustment, the Saral Networks Patent expires on March 27, 2032. A true and correct copy of the Saral Networks Patent is attached as Exhibit 1.

13. Saral Networks is the owner by assignment of all rights, title, and interest in the Saral Networks Patent, including the right to sue and collect damages for past, present, and future infringement.

14. The claims of the Saral Networks Patent are patent eligible, valid, and enforceable.

## COMPLIANCE WITH 35 U.S.C. §287

15. To any extent necessary, Saral Networks and Mr. Samrat Vasisht, the inventor and prior owner of the Saral Networks Patent, have complied with the requirements of 35 U.S.C. §287. Therefore, damages in this action are only limited by 35 U.S.C. §286. Specifically, damages in this action may extend back six (6) years from the filing dated of this Complaint.

## BACKGROUND OF THE CLAIMED INVENTION(S)

16. As explained during prosecution of the Saral Networks Patent, the inventions described and claimed in the patent solved several significant technical challenges that had existed in networking, and particularly in Wi-Fi home networking, for many years. From the mid-1990s and throughout the period leading up to the claimed inventions, industry problems with network configuration and security were well-documented by major industry participants, consumer media, and vendor companies.

17. For example, in the period leading up to the claimed inventions, home networks, including Wi-Fi networks, were extremely cumbersome to set up. According to an article

published the same month that the application for the Saral Networks Patent was filed, at that time only about 25% of users could install wireless equipment successfully without expert assistance:

> **Vendors of wireless LAN equipment must work much harder to make their products more user friendly and to improve security features,** a former Intel executive said Wednesday.
>
> Hours after a Cisco executive speaking at the Wi-Fi Planet Conference & Expo proclaimed that WLANs are ready for the enterprise, Les Vadasz, who retired from Intel earlier this year, brought the crowd back down to earth when he told them that much work remains to be done.
>
> Vadasz joined Intel in 1968 as part of the company's founding team... Intel is a supplier of Wi-Fi products and has invested in Wi-Fi companies.
>
> **The top priority that must be addressed for Wi-Fi gear is ease of use, Vadasz said. Only about a quarter of users can install their wireless equipment without assistance, and resellers complain that customers call for help even before opening the box,** Vadasz said.

(*See* Joris Evers, *Former Intel Exec Sets Wi-Fi Crowd Straight*, IDG News Service (December 4, 2003), available at http://www.networkworld.com/news/2003/1204formeintel.html (emphasis added))

18. At the time, much of the difficulty in setting up such communications networks stemmed from the many technical settings which had to be properly input to successfully establish the network. Such settings could include, for example, various "LAN protocol" specific settings, such as the Service Set Identifier ("SSID") and Wired Equivalent Privacy ("WEP") settings, both of which are used in Wi-Fi protocol, as well as encryption keys used for HomePlug and HPNA.

19. In another article published one month prior to the filing date of the Saral Networks Patent, *The Wall Street Journal* noted that existing home networking technology "falls short," even though such technology was in high demand by consumers:

> Home networking -- which, in theory, allows you to operate a host of electronic appliances, devices and even utilities from, say, a computer -- is something many consumers are increasingly demanding. **A survey of 1,100 people by the Consumer Electronics Association, an industry trade group, found that more than half had a strong interest in networking video and music throughout the home.**
>
> **The problem is that the technology currently out there falls short. Today,** most home networks allow multiple computers to share broadband Internet access, but do

> little else. **The systems that do exist often are difficult to install and operate. In fact, home-networking equipment is one of the most frequently returned items at retail electronics stores, according to technology analysts...**
>
> **..."The market is ready, the technology is not,"** says Dan Nova, managing general partner at Highland Capital Partners, a Boston-area venture-capital firm that invests in companies developing networked products.

(*See* David Armstrong, *Simplify Home Networking*, The Wall Street Journal (November 17, 2003), available at http://online.wsj.com/article/SB106856855475448900.html (emphasis added))

20. The difficulty in setting up these types of networks also contributed to making the networks insecure. Because most users were unable to set up basic security settings, such as Wired Equivalent Privacy (WEP) and Wi-Fi Protected Access (WPA) security settings, most users simply left their networks unsecured and therefore vulnerable to intrusion and data theft. For example, a 2004 article noted:

> **"Some research says 80% of home Wi-Fi networks are wide open and insecure,"** says David Cohen, senior marketing manager at Broadcom. **He blames this squarely on the difficulty in configuring the first generation of Wi-Fi security, called wired equivalent privacy (WEP) -- and he says even WPA isn't that simple.** He would know, as **he's also the chair for the Wi-Fi Alliance's security group,** which defined WPA. Cohen says the research findings didn't surprise him one bit.

(*See* Eric Griffith, *Broadcom: Simplifying Home Setup*, Wi-Fi Planet (May 3, 2004), available at http://www.wi-fiplanet.cominews/article.php/3348481 (emphasis added))

21. Thus, as of late 2003 home networking (and particularly Wi-Fi wireless home networking) showed great potential and was in high demand. However, the existing technology was unable to satisfactorily meet that demand due (at least in part) to the difficulty of setting up these networks. This difficulty carried over into network security, and as a result, many of the relatively small number of users who could set up their home networks in the first place nonetheless left those networks insecure.

22. The invention(s) described and claimed in the Saral Networks Patent changed and improved how networks and computer systems were configured and operated and, in the process, overcame many long-standing, well-documented challenges.

23. The Saral Networks Patent describes and claims the generation of network settings from a network identifier that comprises a set of characters assigned to a specific instantiation of a network to be configured. The network identifier is supplied to one or more algorithms or equations that use the network identifier to automatically generate settings for a node on the network. This had not previously been done or suggested in the field.

24. This solution simplifies the process of setting up a network and improves overall network security. It also eliminates numerous, previously-required, challenging, and complex steps, thereby making secure network setup significantly simpler and faster. Finally, the solution provides a greatly improved process for enabling devices to securely access and become nodes on a network.

## THE SAMSUNG ACCUSED PRODUCTS

25. Samsung makes, uses, sells, offers for sale, and imports into the United States and this District smartphones, tablets, laptop computers, Smart TV, and other devices that use Internet Protocol Version 6 ("IPv6") to connect to local and other wireless networks and provide connectivity to the Internet.

26. These Accused Products include smartphones and tablets that have used Android Version 10 or later operating systems.

27. On information and belief, such Accused Products include, but may not be limited to, all Galaxy S-series smartphones, Galaxy Z foldable smartphones, A Series smartphones, and Galaxy Tab models that have utilized or supported IPv6 since June 2020.

28. Exemplary accused Galaxy S-series smartphone products include models S20 5G, S20+ 5G, S20 Ultra 5G, S20 FE, S20 FE 5G, S21 5G, S21+ 5G, S21 Ultra 5G, S21 FE 5G, S22, S22+, S22 Ultra, S23, S23+, S23 Ultra, S23 FE, S24, S24+, S24 Ultra, S24 FE, S25, S25+, S25 Ultra, S25 Edge, S26, S26+, and S26 Ultra, together with other smart phones that support IPv6 functionality.

29. Exemplary accused Galaxy Tab products include models Tab S6, Tab S7, Tab S7+, Tab S7 FE, Tab S8, Tab S8+, Tab S8 Ultra, Tab S9, Tab S9+, Tab S9 Ultra, Tab S9 FE, Tab S9 FE+, Tab S10+, Tab S10 Ultra, Tab S10 FE, Tab S10 FE+, Tab S10 Lite, Tab S11, Tab S11 Ultra, together with other tablets that support IPv6 functionality.

30. On information and belief, accused Samsung laptop computers include, but may not be limited to, Samsung Book and Chromebook products that have utilized or supported IPv6 functionality since June 2020.

31. On information and belief, accused Samsung Smart TV products include, but may not be limited to, OLED and QLED Smart TVs that have utilized or supported IPv6 functionality since June 2020.

## **ALLEGATIONS OF PATENT INFRINGEMENT**

32. Saral Networks incorporate the allegations of the foregoing paragraphs as if fully restated herein.

33. As set forth below, the Accused Products incorporate, without any license or authorization from Saral Networks, technology protected by the asserted Saral Networks Patent. Saral Networks respectfully seeks relief from this Court for Defendants' infringement.

34. Samsung has and continues to make, have made, use, sell, offer for sale, import, have imported, test, design, and/or market in the United States smartphones, tablets, laptop computers, and Smart TVs that infringe the Asserted Patent.

35. Samsung has directly infringed, and continues to directly infringe, the Asserted Patent under 35 U.S.C. § 271(a) and (g) by making, using, selling and/or offering to sell, in this District and elsewhere in the United States, and/or importing into this District and elsewhere in the United States Accused Products that infringe the asserted Saral Networks Patent, as further described in detail below.

**INFRINGEMENT OF THE SARAL NETWORKS PATENT**

36. Saral Networks incorporates the allegations of all the forgoing paragraphs as if fully restated herein.

37. Samsung has infringed and continues to infringe at least claims 22, 29, 31, and 41 of the Saral Networks Patent under 35 U.S.C. §271(a) and (g), literally or under the doctrine of equivalents, by making, using, selling and/or offering for sale, and importing in the United States the Accused Products in the United States and within this District without permission from Saral Networks.

38. Samsung's infringement is detailed in the Claim Chart attached hereto as Exhibit 2.

39. Nonetheless, by way of non-limiting example, Saral Networks provides a summary of Samsung's infringement in the following paragraphs with claim language provided in *Italics*. Saral Networks reserves the right to modify this description, including on the basis of information it receives in discovery.

40. Exhibit 3 is a 163-page printout of net/ipv6/addrconf.c from the Samsung Galaxy S25+ kernel source. Exhibits 4-14 are supplementary code printouts from the same Samsung Galaxy S25+ kernel source.

41. Exhibits 3-14 were downloaded from the SM-S936U_NA_16_Opensource.zip file on opensource.samsung.com. The path and location for Exhibit 3 are illustrated below.







42. With bracketed identifiers added to correspond with the Claim Chart attached as Exhibit 2, Claim 22 states:

> [22a] A nontransitory electronic device readable storage medium comprising instructions that, when executed by one or more processors, causes the processors to:
>
> [22b] provide, at an electronic device having an interface for communicating with a communications network, [22c] a network identifier (NID) that identifies the communications network, [22d] the NID comprising a set of characters [22e] assigned to a specific instantiation of the communications network;
>
> [22f] receive a request that a node device be configured for use in the communications network;
>
> [22g] input the NID to one or more algorithms or equations;

[22h] using the one or more algorithms or equations, apply the NID to generate values for a plurality of parameters [22i] describing a configuration for the node device, [22j] wherein the values are automatically generated from the NID; and

[22k] write the plurality of parameters to a memory of the node device.

43. For claim 22, Saral claims the following.

*[22a] A nontransitory electronic device readable storage medium comprising instructions that, when executed by one or more processors, causes the processors to*:

44. All Accused Products are electronic devices that include at least one processor and memory, i.e., a non-transitory readable storage medium for storing instructions that when executed by one or more processors of the Accused Products cause processes to occur.

45. For example, the Accused Products come with an operating system and user interface pre-installed. The instructions within this programming, when executed by one or more processors of the Accused Products, cause processes to occur.

46. As an example, Samsung Galaxy S20-S26 series smartphone products include at least one processor and memory, i.e., a non-transitory readable storage medium for storing instructions that when executed by one or more processors of the Samsung Galaxy S20-S26 series smartphone products cause processes to occur.

47. The Samsung Galaxy S20-S26 series smartphone products are sold in the United States with an Android operating system and user interface pre-installed.

48. The Samsung Galaxy S20 smartphone included the Android Version 10 operating system and One UI 2.1 at launch, and the Samsung S26 smartphone included the Android Version 16 operating system and One UI 8.5 at launch.

49. The instructions within this programming, when executed by one or more processors of the Samsung Galaxy S20-S26 series smartphone products, cause processes to occur.

*[22b] provide, at an electronic device having an interface for communicating with a communications network,*

50. The Accused Products are all electronic devices that contain interfaces for communicating with Wi-Fi and other communications networks.

51. For example, Samsung Galaxy S20-S26 series smartphone products include interfaces for communicating with Wi-Fi and other communications networks.

*[22c] a network identifier (NID) that identifies the communications network*

52. All Accused Products support Internet Protocol Version 6 ("IPv6") for, *inter alia*, establishing connections with or joining Wi-Fi and other networks.

53. IPv6 functionality is included, for example, within all Android operating systems since Android Version 5.0, and the smartphone and tablet Accused Products have used Versions 10 and later.

54. The exemplary Samsung Galaxy S20-S26 series smartphone products launched with Android Versions 10 to 16 as their respective operating systems.

55. When utilizing IPv6, a provided "Prefix" identifies a communications network.

*[22d] the NID comprising a set of characters*

56. IPv6 addresses and Prefixes have a defined text representation as strings of hexadecimal characters (e.g., 2001:db8::/32).

*[22e] assigned to a specific instantiation of the communications network;*

57. The set of characters in an IPv6 Prefix identifies a specific instantiation of a communications network.

58. Indeed, in IPv6, all addresses including private addresses are unique.

*[22f] receive a request that a node device be configured for use in the communications network;*

59. Accused Product user Interfaces (UIs) and operating systems allow a user to identify locally available Wi-Fi networks and to join, i.e., make an Accused Product a node on, one of those networks.

60. When this happens the UI in conjunction with the operating system issues a request to a processor (or processors) to have the Accused Product made a node on the network.

61. For example, the Samsung Galaxy S20 smartphone included the Android Version 10 operating system and Samsung One UI 2.1 at launch, and the Samsung S26 smartphone included the Android Version 16 operating system and Samsung One UI 8.5 at launch.

62. The instructions within this programming, when executed by one or more processors of the Samsung Galaxy S20-S26 series smartphone products, allow a user to identify locally available Wi-Fi networks and to join, i.e., make the products a node on, one of those networks.

63. When this happens the UI in conjunction with the operating system issues a request to a processor (or processors) to have the product made a node on the network.

*[22g] input the NID into one or more algorithms or equations*

64. When using IPv6 to connect to a network, Prefixes are input to one or more algorithms.

65. Standards documents defining functionality provided by the Android and other operating systems used by Samsung and the exemplary Samsung Galaxy S25+ kernel source attached as Exhibit 3 confirm that IPv6 Prefixes are input into one or more algorithms.

*[22h] using the one or more algorithms or equations, apply the NID to generate values for a plurality of parameters*

66. Using one or more algorithms or equations, the Prefix (i.e., NID) is applied to generate several parameters including, but not limited to, a unicast address, a multicast address, and a scope parameter.

67. Standards documents (IETF RFCs) defining functionality provided by the Android and other operating systems used by Samsung confirm that, using one or more algorithms or equations, the Prefix, i.e., NID, is applied to generate values for a plurality of parameters.

68. The exemplary Samsung Galaxy S25+ kernel source attached as Exhibit 3 confirms that, using one or more algorithms or equations, the Prefix, i.e., NID, is applied to generate values for a plurality of parameters, for example, unicast address, multicast address, and scope parameters.

*[22i] describing a configuration for the node device,*

69. The generated parameters describe a network configuration for the node device.

*wherein the values are automatically generated from the NID;*

70. Using IPv6, addresses are automatically generated from the Prefix.

71. Standards documents (IETF RFCs) defining functionality provided by the Android and other operating systems used by Samsung confirm that the parameter values, e.g., addresses, are automatically generated from the Prefix (i.e., NID).

72. The exemplary Samsung Galaxy S25+ kernel source attached as Exhibit 3 confirms that parameter values, e.g., addresses, are automatically generated from the Prefix (i.e., NID).

*[22j] and write the plurality of parameters to a memory of the node device.*

73. Generated addresses are stored in memory of the node device.

74. Standards documents (IETF RFCs) defining functionality provided by the Android and other operating systems used by Samsung confirm that the plurality of parameters are written to a memory of the node device.

75. The exemplary Samsung Galaxy S25+ kernel source attached as Exhibt 3 confirms that that the plurality of parameters are written to a memory of the node device.

76. Regarding claim 29, beyond writing the parameters to memory, the instructions for executing IPv6 functionality put the written configuration into operational effect on the node device.

77. After the address is written, it exists in a tentative state and is not yet usable; the device runs duplicate address detection, and only when that process completes does the configuration become active.

78. Regarding claim 31, the parameters generated using the Prefix in IPv6 are IP network settings.

79. Regarding claim 41, the Accused Products independently self-configure using the received Prefix, as described above regarding claim 22. The Accused Products comprise both the electronic device and node device recited in the claim.

80. Samsung's prior and continued infringement has damaged and will continue to damage Saral.

81. Saral Networks is entitled to recover damages adequate to compensate for Samsung's infringement.

## JURY TRIAL DEMANDED

Saral Networks demands a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

WHEREFORE, Saral Networks respectfully requests the following relief:

a) A judgment that the asserted Saral Networks Patent is valid and enforceable;

b) A judgment that Defendants have infringed, directly, either literally or under the Doctrine of Equivalents, one or more claims of the Asserted Saral Networks Patent;

c) A judgment that awards Saral Networks all appropriate damages under 35 U.S.C. § 284 for Defendants' past infringement, and any continuing or future infringement of the Saral Networks Patent, including pre or post judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Saral Networks for Defendants' infringement, an accounting;

d) A judgment that this case be declared exceptional within the meaning of 35 U.S.C. § 285, and that Saral Networks be awarded its reasonable attorneys' fees against the Defendants incurred in prosecuting this action;

e) A judgment that Saral Networks be awarded costs and expenses incurred in prosecuting this action; and

f) A judgment that awards all other and further relief that this Court may determine to be just and appropriate under the circumstances.

Dated: June 26, 2026

Respectfully submitted,

*/s/ Eric H. Findlay*

Eric H. Findlay
State Bar No. 00789668
FINDLAY CRAFT, P.C.
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Tel: (903)534-1100

Fax: (903)534-1137
efindlay@findlaycraft.com

James P. Brogan
No. 32,573
**LEÓN COSGROVE JIMÉNEZ, LLP**
999 18th St., #1200S
Denver, Colorado 80202
Tel: (720) 689-7749
Facsimile: (305) 570-3253
Email: jbrogan@leoncosgrove.com

*Counsel for Plaintiff, Saral Networks LLC*